## LEHIGH VALLEY R. CO. v. McGRANAHAN.

(Circuit Court of Appeals, Second Circuit. February 9, 1925. On Rehearing, May 11, 1925.)

No. 138.

1. **Trial** ⬅109 — **Issues held not limited by opening statement.**

While an admission of fact by the attorney for plaintiff in his opening statement may be taken as a conceded fact in the case, his omission to state every possible ground of recovery does not limit plaintiff to the grounds particularly stated, where other grounds are within the allegations of the complaint.

2. **Master and servant** ⬅286(33)—**Right of injured brakeman to rely on conductor closing switch held for jury.**

The evidence in an action against a railroad company for injury to a brakeman *held* to justify submission to the jury of the questions whether it was the duty of the conductor of a yard train under the circumstances shown to close a switch, and whether plaintiff had a right to rely on his doing so.

3. **Master and servant** ⬅228(1)—**Contributory negligence does not defeat recovery for injury under Employers' Liability Act.**

Under Employers' Liability Act, § 3 (Comp. St. § 8659), the fact that plaintiff and another employee were chargeable with negligence which contributed to plaintiff's injury does not warrant direction of a verdict for defendant.

Hough, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Thomas McGranahan against the Lehigh Valley Railroad Company. Judgment for plaintiff, and defendant brings error Affirmed.

Allan McCulloh, of New York City (Clifton P. Williamson, of New York City, of counsel), for plaintiff in error.

Sydney A. Syme, of Mt. Vernon, N. Y., for defendant in error.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

HAND, Circuit Judge. The plaintiff was a brakeman at work in the Jersey City yards of the defendant on January 27, 1921. He had been in its steady employ since 1910, and for the proceding four months had worked in these same yards. The accident happened at night, as follows: The crew, which consisted of an engineer, a fireman, two brakemen, and a conductor, were drilling freight cars in the yard. Next to the engine was an open flat car, called a "pusher," with which it was the habit to push cars upon floats in the Hudson river. A train of 11 freight cars was backed down one track by the engine and the pusher to a point at which it became desirable to add another car on a parallel track to the south. To do this the engine and the pusher were cut off and went back westward, until they had come to the switch of a cross-over leading to the south track. Thereupon they backed down over the cross-over to the south track to get the car that was to be picked up. Between the point where the cross-over led into the south track and the place where the single car stood was the switch of another cross-over, which led back to the first track, on which stood the 11 cars. The plaintiff was riding upon the end of the pusher away from the engine. As it backed over the first cross-over and onto the second track, the plaintiff, who was riding on the step of the pusher, saw that the switch light for the second cross-over was not closed, and that the pusher would therefore run over that cross-over and back again on the first track, where stood the string of 11 cars. Seeing that a collision was inevitable, and thinking that the train was moving too quickly to jump, he tried to get onto the platform of the pusher. He did not step quickly enough, and was caught between the pusher's end and the first or second car of the original string. The negligence asserted was in leaving open the switch which led

back from the south track by means of the cross-over back to the first. It was not disputed that the plaintiff was engaged in interstate commerce and that the federal Employers' Liability Act (Comp. St. §§ 8657–8665) applied.

[1] The defendant raises two points: First, that the court's charge to the jury was erroneous; and, second, that the defendant was entitled to a dismissal of the complaint. In order to understand the supposed error in the charge, it is necessary to state the evidence more fully, and in this connection first to consider the pleadings. The eighth article of the complaint, which alone alleged fault, charged that the operation of the trains was conducted carelessly by the defendant, its officers, agents, and servants, particularly because the switch over which the train passed was improperly set. The defendant asked a bill of particulars, to which the plaintiff replied that the persons guilty of the negligence alleged were "the conductor, engineer, and fireman of the crew." Thus the defendant went to trial, knowing that the plaintiff claimed the defendant's failure to operate the train carefully, and especially to close the switch, was due to the personal carelessness of the conductor, the engineer, and the fireman.

The plaintiff's story was that the conductor had got off the string of cars before it came to a stop on the first track, and stopped it when he was about opposite the pusher. He then ordered the plaintiff, who, as we have said, was on the pusher, to uncouple it, so that it and the engine might go back westward to the point of the cross-over leading to the south track. At that time the plaintiff says that the conductor told him he was to go in on the south track, and that he (the conductor) would "line up" the switches. The plaintiff relied upon this promise, which necessarily included closing the switch which led from the south track over the second cross-over to the track on which the string stood. The conductor denied the statement so imputed to him by the plaintiff, and the supposed error in the charge consists in not limiting the jury in their consideration strictly to the question of whether the promise was made. The learned judge added that they were to consider, also, "whether he did all that he (the conductor) as a reasonably prudent man should have done," a charge which later he refused to modify, when the matter was expressly called to his attention. To support the charge, therefore, it becomes necessary to inquire whether there was any basis for the verdict in case the promise had

not been made. The defendant asserts that the pleadings raise no other issue, that upon the opening the plaintiff made no other suggestion, and that the evidence contains no justification for the latitude which the District Judge allowed to the jury.

From what we have already stated of the pleadings, it seems to us plain that, if there was evidence aside from the promise which justified a verdict, it was open to the plaintiff to urge it. The allegations of the eighth article of the complaint are most general in their character, and permitted the plaintiff to show any negligence on the part of the conductor, engineer, and fireman which might have resulted in leaving a switch open and in moving the trains over the switch without observing that it was not closed. Nor can we find in the opening to the jury any admission which concluded the plaintiff. We recognize, of course, that an admission of fact made by an attorney at any stage in the trial, including the opening, may be taken as a conceded fact in the case, Smith v. Standard Sanitary Mfg. Co., 254 F. 427, 166 C. C. A. 59 (C. C. A. 2); but we can find no admission in the opening which would have justified the learned court in limiting the jury to the single issue of whether the promise was made. It is one thing to make an admission of fact intended as such, and another completely to state in the opening all possible grounds of recovery. Indeed, in case the evidence had to be in part extracted from hostile witnesses, the second course might be disastrous. We do not think, therefore, that the opening limited the plaintiff to the promise of the conductor and cut him off from showing that the engineer might in season have seen that the switch was open, or that the plaintiff might reasonably have supposed that the conductor would close the switch, regardless of any promise. Nor do we attach any significance to the plaintiff's statement after the charge that the failure of the conductor to turn the switch was the only question of fact in the case. Strictly, indeed, this was true, because the only disputed questions of fact were, first, whether the conductor had promised to turn the switch; and, second, whether, independently of any promise, the plaintiff might reasonably have supposed that he would. The rest was only, What was the proper measure of care to be imputed to the engineer in operating the engine?

[2] Hence the case comes down, in our judgment, to one of evidence. If the jury did not believe that the conductor made the promise, was there still any ground to find

6 F.(2d)—28

either the conductor or the engineer at fault, the conduct of both of whom the judge left to the jury? This in turn depends upon how the work was distributed between the members of the crew. The defendant relies altogether upon one part of the plaintiff's cross-examination, the full force of which can only be learned by a perusal of the whole. The cross-examiner effectively checked some answers, not strictly responsive it is true, which clearly were intended to say that it was the conductor's duty to turn the switch as he went up the south track. After this check, the cross-examiner procured a categorical assent to the question whether it was the plaintiff's duty to throw the switch if the conductor had not made the promise. The defendant's argument, based on this answer, may be most forcibly stated as follows: Granting that the jury might find from other evidence that the division of work was such in fact that the conductor should have thrown the switch, and that the plaintiff might reasonably have relied upon his doing so, here was a flat admission that the plaintiff did not so understand their relative duties. Whether or not he was wrong in that understanding is not material; since he did so understand, he at least did not rely upon the conductor. Thus, even if the conductor should have thrown the switch, his failure to do so could not have been the cause of the plaintiff's mishap. To be such the plaintiff must have relied upon it, and he says in substance that he did not. Hence the judge should not have left any part of the conductor's conduct to the jury, except on the hypothesis that he promised to throw the switch.

We must own that, if the plaintiff's testimony be taken as an unequivocal admission that he thought the throwing of the switch was his duty under that precise situation, we should see no escape from the defendant's argument. Yet, while we feel the force of the answer actually made, we still think that what preceded and followed it gave room for an interpretation which the jury might have made. We have already mentioned the abortive efforts of the plaintiff apparently to say that it was the conductor's duty to throw the switch when he went down the track. After the admission we have mentioned, the court asked the plaintiff whether he knew in every case or was told what switches to throw. He answered that in case of a movement the man that precedes is the man who throws the switch, and later that the conductor throws them as well as the brakemen.

Then finally he said that ordinarily on such a movement a man in his position that night would turn the twitch.

We confess that this testimony leaves us in doubt. It seems to us open to the construction that ordinarily—that is, if the conductor had not preceded the engine and pusher down the track—then, and then only, was it the plaintiff's duty, as he understood it, to throw the switch. We do not feel that he ever unequivocally meant to say that, as matters actually were that night, it would have been his duty alone, and, considering the fact that the conductor must in any case pass close beside it, and that the plaintiff would have to make an independent stop to turn it, it seems to us very improbable that he could have meant to give more than a statement of the relative duties when the conductor was not near by. Besides, we think that the jury might use the defendant's own evidence, not only in deciding what the actual division of duty was, but also in interpreting the plaintiff's own testimony. It is quite clear, from reading the conductor's testimony, that the jury might have found the division of work among the crew just as the plaintiff argues. In answer to the court he said that sometimes he threw the switches himself, as well as the two brakemen who were with him; later, that the conductor or anybody is "supposed" to throw the switches, "whoever is the handiest." This was on his direct-examination. On his cross-examination he said that as a rule the man nearest the switch is the man who throws it; that whichever of the three, himself and the two brakemen, happened to be nearest the switch would throw it, if he saw it and took notice of it; finally, that in the case of a switch situated as that in question, very often, if he was "handy," he might throw it himself.

All this seems to us to leave a question for the jury. The switch in question on the south track was about opposite where the conductor had got off the train. He had walked across the first track and towards the south one, and would necessarily pass close by the switch on his way towards the car that was to be picked up, which he meant to examine. A jury might fairly conclude, we think, that he would pass close beside it, and that the plaintiff might reasonably suppose, and he should know that the plaintiff might suppose, that he would turn it. This would not have been a wholly unreasonable assumption for the plaintiff, who would otherwise, as we have said, have had to stop the engine, get off the pusher, close the switch, mount the pusher again, and start the engine.

Hence we think that the judge's charge did not go beyond what the evidence permitted, and indeed that the plaintiff was entitled to have the jury interpret his reasonable expectation, all things considered.

The judge also allowed the jury to find that the engineer was negligent in not observing in season that the switch was set against him. The engine was backing, and the engineer was on the right side of the cab, as usual. Looking backward, as he should, he would have seen the switch light, had he looked, and his only excuse for not seeing it is that the plaintiff's body hid it. That was in fact, we should suppose, somewhat doubtful, but in any event it was clearly a question for the jury. He, as well as the plaintiff, was charged with the duty of watching the lights, and if he failed it was a fault of the defendant. Hence we cannot see that the charge in any respect was erroneous.

[3] The second point is that the complaint should be dismissed, or a verdict directed for the defendant. This is on the ground that the accident was immediately caused by the plaintiff's negligence. This point need not detain us long. The operation was carelessly conducted for two reasons: First, because the switch had not been turned as it should; and, second, because nobody on the locomotive or pusher saw in time that it had not been turned. The first was due to the neglect of the conductor if he made the promise, and possibly if he did not. The second was due to the negligence of both the conductor and the plaintiff, each of whom should have seen the light in time. The rule which the defendant invokes is only this: That, where a person has observed the results of earlier negligence, his conduct must be governed accordingly. It does not apply when he is not aware in season of these results, even though that be the result of his own carelessness. In the case at bar we find no way of distinguishing between the negligence of the conductor, the engineer and the plaintiff. Under the federal Employers' Liability Act it would therefore have been improper for the learned judge to take the case from the jury.

Judgment affirmed.

HOUGH, Circuit Judge, dissents, without opinion.

### On Rehearing.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

PER CURIAM. We granted the rehearing in this case because the defendant insisted that we had ignored the rule in Frese v.

Chicago, Burlington & Quincy Railroad Company, 263 U. S. 1, 44 S. Ct. 1, 68 L. Ed. 131. The theory was that the defendant could not be held liable for the engineer's failure to observe the switch light, if, in the distribution between them of the work, plaintiff's primary duty was to do just that. This may be true, but the rule does not apply. The plaintiff testified several times that, as soon as he saw the light, which was when he was 175 feet away from it, he gave the "back-up" signal with his lamp. This the engineer says he did not see, but the question was clearly one of fact. If the plaintiff did give the "backup" signal 175 feet from the switch, it was 250 feet from the place of collision, since the pusher had to travel across the crossover before reaching the cars on the east-bound track. There was room for the jury to hold the defendant because of the engineer's failure to stop or slow down the train.

The defendant argues that the plaintiff's story could not have been true, because he admitted that he had no time to clamber to safety after giving the signal. Perhaps so, but we cannot undertake to resolve such questions. The plaintiff may not have moved as quickly as he should after giving the signal. He may not have seen the light as far away as he says. The train may have been moving faster than the engineer allows. Various permutations of the possibilities can be made with opposite results. We must especially remember that it was not necessary to find that the engineer could have altogether stopped the train. The plaintiff nearly got to a place of safety, as it was. Though the signal was given much later than when the plaintiff puts it, the jury might well have thought that, if the engineer had acted promptly, he could have checked the train's speed enough to give the plaintiff just that added time which he needed to get over the railing. With such questions we may not deal; they are all answered by the verdict.

Judgment affirmed.